E-FILED
Wednesday, 27 May, 2020  12:22:25 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ROBERT WILLIAMS,           )
   Plaintiff,              )
                           )
   vs.                     )          No. 20-1001
                           )
LIEUTENANT MOLINERIO, et.al.,   )
   Defendants.             )

MERIT REVIEW ORDER

This cause is before the Court for merit review of the Plaintiff's complaint.  The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a *pro se* prisoner, claims 11 Defendants at Pontiac Correctional Center violated his constitutional rights including Lieutenants Molinerio, Gish, Corley, and Biros; Mental Health Worker Potowski; Correctional Officers Painter, North, and Reed; Health Care Unit (HCU) Worker Don; Nurse Sherry and Assistant Warden Emily Ruskin.

It is difficult to interpret portions of Plaintiff's complaint since he does not always follow a chronological order, he repeats his claims, and some lines at the top of each page are difficult to read.  Nonetheless, Plaintiff clearly alleges the Defendants were all deliberately indifferent to his serious mental and medical condition.

1

On October 12, 2018, Plaintiff swallowed toenail clippers.  Plaintiff says Defendant Reed provided the clippers, but Plaintiff does not claim this violated any policy or restriction. When Defendant Reed came to retrieve the clippers, Plaintiff told the Defendant what he had done. The Officer then notified Defendant Gish.  Plaintiff was strip searched and the two Defendants searched his cell, but they could not find the clippers.  Defendant Gish ordered Defendant Reed to take the Plaintiff downstairs.

Once there, Defendant Lieutenant Molinerio asked Officer Reed why he was bringing Plaintiff to the gallery. The Officer informed the Lieutenant Plaintiff had swallowed toenail clippers.  Plaintiff then asked Defendant Molinerio and Mental Health Worker Potowski for a crisis team.

Defendant Molinerio interrupted and said he hoped Plaintiff would die.  The Defendant then instructed Defendant Potowski to "turn his ears off" even though the officer was a member of the crisis team. (Comp, p. 6).  The Lieutenant instructed Potowski to move Plaintiff to the "cage" on two gallery. (Comp., p. 6).  Plaintiff said he remained in this location for two to three hours.  No other crisis team members were notified and Plaintiff was not placed on suicide watch.

While not completely clear, it appears Plaintiff was then moved to another location with "a big shield in front of my cell for no reason." (Comp, p. 7).  Plaintiff says all water was turned off to his cell and he was not allowed any sheets for two days.

When Nurse Tinsley stopped by to deliver medication on October 12, 2018, Plaintiff told her he felt dizzy and dehydrated and asked for his water to be turned on. The nurse said she would let correctional officers know about his complaints.

2

Plaintiff also informed Officer Painter he had no water in his cell and asked to speak to Lieutenant Corley.  When the Officer came back to get a food tray, Plaintiff placed his hand in the food slot, refused to move, and therefore the slot could not be closed.  Officer Painter reported Plaintiff's actions to Defendant Corley.  The Lieutenant said he would speak to the Plaintiff if he removed his hand from the food slot.  Plaintiff complied, but the Lieutenant still refused to speak with him.

Plaintiff told Officer Painter he needed to see a doctor because he swallowed a toenail clipper, he was in pain, and he was spitting up blood.  Plaintiff says this information was also reported to Defendant Corley and Defendant Biros, but no action was taken.

Nonetheless, Plaintiff alleges Mental Health Worker Rall came to see Plaintiff on October 14, 2018, and Plaintiff told her all that had happened.  She moved Plaintiff to a different area, but Plaintiff says he still did not receive any medical attention.

On an unspecified day, Plaintiff says he told Nurse Sherry he was spitting up blood and the nurse said she knew, but she refused to provide any medical or mental health care.

Plaintiff also alleges an HCU staff member named Don reported there were no missing toenail clippers.

Plaintiff continued to suffer in pain and spit up blood until the toenail clippers finally showed up on an x-ray.  Dr. Tilden sent Plaintiff to St. James Hospital where they were removed after 27 days.

3

Plaintiff says he later discovered Assistant Warden Ruskin knew Plaintiff had swallowed the clippers, but she refused to notify mental health providers or medical staff.

Based on his allegations, Plaintiff says the named Defendants violated his Eighth Amendment rights when they were deliberately indifferent to his condition. (Comp., p. 9).  Plaintiff does not mention a separate claim based on his living conditions, but instead Plaintiff appears to be alleging his conditions were further proof of the deliberate indifference toward his medical and mental health needs.

Plaintiff has attached grievances and medical records to his complaint which contradict some of his claims.  For instance, a grievance response notes medical staff was advised Plaintiff had swallowed the clippers on October 12, 2018, but Plaintiff was not in distress. (Comp., p. 15).  On October 23, 2018, an x-ray located the clippers.  Plaintiff was "admitted to the Infirmary and medications ordered to evacuate bowels.  Offender was non-compliant with med. order." (Comp., p. 15).  On November 8, 2019, a gastroscopy was performed to remove the clippers.

A second grievance response indicates Plaintiff was seen daily on crisis watch from October 14, 2018 to November 12, 2018. (Comp., p. 19).

The medical records also verify medical staff was informed Plaintiff claimed he swallowed nail clippers on Friday, October 12, 2018.  (Comp., p. 33).  Plaintiff was seen in Urgent Care on Monday, October 15, 2018, and an x-ray was ordered. (Comp, p. 33).  Medical records indicate additional contact with medical and mental health

4

professionals as well as the x-ray confirming Plaintiff had swallowed the clippers and medications were ordered. (Comp, p. 36).

While the medical record demonstrates medical staff was alerted as soon as Plaintiff reported he had swallowed clippers, Plaintiff's complaint still alleges he was still left to suffer in pain and he was coughing up blood. *See Hotchkiss v. David*, 713 Fed.Appx. 501, 505 (7th Cir. 2017)(although attached medical records showed repeatedly medical visits, only one complaint of pain, and prescribed pain medication, the "conclusion that (plaintiff) received sufficient treatment was premature at the screening stage when factual allegations must be accepted as true and reasonable."). In addition, while medical records indicate a crisis team member visited Plaintiff, it appears Plaintiff is alleging he was still not provided mental health care during this time.

Nonetheless, Plaintiff cannot allege the correctional officers failed to notify medical staff. Both the medical records and grievance responses demonstrate medical staff was notified the day Plaintiff said he had swallowed the clippers. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013)("To the extent that an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence."); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss."). *Palmer v. Baldwin*, 2019 WL 3074173, at *4 (S.D.Ill. July 15, 2019)(complaint's detailed account of medical treatment provided demonstrate doctor was not deliberately indifferent).

The Court also notes correctional staff are not medical providers and instead their responsibility typically ends  if medical staff is monitoring and addressing the problem. *See Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir.2006). "We do not think [a prison official's] failure to take further action once he had referred the matter to the medical providers can be viewed as deliberate indifference." *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir.2005).  Nonetheless, non-medical officials can "be chargeable with the Eighth Amendment scienter requirement of deliberate indifference" where they have "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004); *see also Greeno*, 414 F.3d at 655-56; *Johnson*, 433 F.3d at 1012.

At this initial stage, Plaintiff has adequately alleged Defendants Molinerio, Gish, Corley, Biros, Painter, North, Reed, Potowski, Ruskin and Nurse Sherry either knew Plaintiff was not receiving any care for his pain or knew he was not receiving mental health care.  However, Plaintiff's only allegation against HCU Worker Don is the Defendant reported there were no missing toenail clippers.  Plaintiff does not allege the Defendant intentionally provided false information or the statement led to any delays. Therefore, the Court will dismiss Defendant Don.

Plaintiff has also filed a motion for appointment of counsel. [5]. Plaintiff has no constitutional right to the appointment of counsel.  In addition, the Court cannot require an attorney to accept *pro bono* appointment in a civil case.  The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

6

In considering Plaintiff's motion, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993).

The only information provided in Plaintiff's motion demonstrates he made at least some attempt to find counsel on his own. Nonetheless, Plaintiff is a very experienced litigator. In fact, Plaintiff (Inmate Number N03588) has filed at least 14 cases in the Central District of Illinois and approximately 17 more in the Southern and Northern Districts of Illinois. *See Williams v. Wexford,* Case No. 17-1466; *Williams v Boland*, Case No 17-1467; *Williams v. Prentice,* Case No.17-1468 (*pro se*); *Williams v. Chicke,* Case No.17-1567 *Williams v. Kennedy,* Case No.20-1028 (*pro se*); *Williams v. Molinerio,* No.19-1402 (*pro se*); *Williams v. Tilden,* Case No.19-1413 (*pro se*); *Williams v. Kennedy,* Case No.20-1028 (*pro se*); *Williams v. Reed,* Case No.20-1040 (*pro se*); *Williams v. North,* Case No.20-1070 (*pro se*); *Williams v. Shicker,* Case No.15-2221; *Williams v. Peters,* Case No.91-2049 (*pro se*); *Williams v. McEvers,* Case No. 89-3196 (*pro se*); *Orr, et. al. v. Elyea*, Case No. 08-2232.

Furthermore, it does not appear as though Plaintiff has earned any "strikes" pursuant to 28 U.S.C. §1915(g) in his previous lawsuits.

While portions of Plaintiff's complaint were difficult to follow, Plaintiff was able to explain his claims and how each Defendant was involved.  Plaintiff also attached relevant grievances and some medical records.  Plaintiff will be able to obtain any other

relevant medical or mental health records during discovery. Plaintiff should also be able to testify personally to the pain he experienced, his attempts to obtain help, and the responses he received.  All of which can be used to show evidence of deliberate indifference.  *See Ledford v. Sullivan*, 105 F.3d 354, 358 (7th Cir. 1997)(expert testimony not necessarily required to establish deliberate indifference).

In addition, the Court will enter a scheduling order in this case after Defendants are served which provides information to assist a *pro se* litigant, and requires the exchange of initial, relevant discovery.  Based on the evidence before the Court, Plaintiff's motion is denied.[5].

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges Defendants Molinerio, Gish, Corley, Biros, Painter, North, Reed, Potowski, Ruskin and Nurse Sherry were deliberately indifferent to Plaintiff's serious medical or mental health conditions when they knew Plaintiff was not receiving any care for his pain and not receiving mental health care after he swallowed toenail clippers on October 12, 2018. The claim is stated against the Defendants in their individual capacities only. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give

8

Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service.  Defendants have 60 days from service to file an Answer.  If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Order.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of

those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.   The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel**.**

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

1**) Dismiss Defendant HCU Worker Don for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 2) Deny Plaintiff's motion for appointment of counsel, [5]; 3) Attempt service on**

**Defendants pursuant to the standard procedures; 4) Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and 5) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 27th day of May, 2020.

s/ James E. Shadid

_____

JAMES E. SHADID
UNITED STATES DISTRICT JUDGE